UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD KATZ et al.,

                Plaintiffs,                      Civil Case No. 13-11568
                                                Honorable Linda V. Parker

v.

VILLAGE OF BEVERLY HILLS
et al.,

                Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]

Plaintiffs Donald Katz ("Katz") and Karen Markel ("Markel") (collectively "Plaintiffs") are husband and wife, and filed their third amended complaint against Defendants Village of Beverly Hills, Christopher Wilson, Daniel Gosselin, and Jeanne Baker (collectively "Defendants"). (ECF No. 39.) Plaintiffs, acting upon the provisions of 42 U.S.C. § 1983, have cited violations of the Fourth Amendment, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Plaintiffs also assert a state law claim of malicious prosecution. Prior to the filing of the summary judgment motion currently before this Court, the parties stipulated to the dismissal of Defendants Christopher Wilson, Daniel Gosselin, and Jeanne Baker. (ECF Nos. 52, 60.) Thus, the sole Defendant remaining in this action is the Village of Beverly Hills (hereinafter "Village" or "Defendant"). On July 15, 2015, Defendant

1

filed its motion for judgment on the pleadings and/or summary judgment, pursuant to

Federal Rules of Civil Procedure 12(c) and 56. (ECF No. 61.) The Court must rely on

information outside of the pleadings to resolve the motion, and will therefore treat the

motion as a motion for summary judgment. For reasons that follow, the Court

**GRANTS** Defendant's summary judgment motion.

## I.      Factual Background

Plaintiffs are husband and wife and are of the Jewish faith. (Third Am. Compl.,

ECF No. 39 at Pg. ID 347.) They reside in Oakland County, Michigan and are the

owners of the property located at 32286 Auburn Drive, Beverly Hills, MI 48025. (*Id.*)

In their complaint, Plaintiffs recount various encounters they experienced involving

themselves, the Village Public Safety Department, and their neighbors. (*Id.* at Pg. ID

348.)

First, Plaintiffs state that in 2005, Katz was visited by code enforcement officer

Daniel Gosselin ("Officer Gosselin"), regarding a complaint made by Katz's neighbor,

Audrey Lambrecht ("Lambrecht"). (*Id.*) Apparently, Lambrecht filed a complaint in

which she asserted that the area behind Plaintiffs' garage was untidy. (*Id.*) Officer

Gosselin apparently advised Katz that the flower pots, plant stands, and wheel barrow

in back of the garage did not constitute any sort of violation of municipal code, but he

suggested that Katz straighten up the area in the spring. (*Id.*; Katz Aff., ECF No. 63-2

at Pg. ID 652.) Katz promised Officer Gosselin that he would clean up the area in the

spring. (Third Am. Compl., ECF No. 39 at Pg. ID 348.) Subsequently, in spring 2005,

2

Katz sent an email to Defendant, inquiring as to "what the Village allowed for outdoor storage." (*Id.*) Plaintiffs state that in response to Katz's email, a different code enforcement officer, Officer David Byrwa ("Officer Byrwa"), issued Katz a citation, for his untidy yard and for having stored his flower pots and fencing outdoors. (Third Am. Compl., ECF No. 39 at Pg. ID 349; Katz Aff., ECF No. 63-2 at Pg. ID 654.) Plaintiffs claim that at the pretrial conference concerning the citation, when Katz asked Officer Byrwa why the citation was issued against him, Officer Byrwa responded by claiming: (1) that the back of Plaintiffs' garage was "a mess"; (2) that Katz was "a pig"; and (3) to silence Katz since he "was threatening to sue over the matter." (Third Am. Compl., ECF No. 39 at Pg. ID 349; Katz Aff., EFC No. 63-2 at Pg. ID 654.) Further, Plaintiffs assert that "[w]hen Katz asked Byrwa how he reached those conclusions, Byrwa showed Katz the email Katz had sent the Village, pointed to the signature block of Katz which included the designation 'Esq.,' and said 'you are a Jew lawyer.' " (Third Am. Compl., ECF No. 39 at Pg. ID 349.)

Further, at that same pretrial conference, Officer Byrwa told Katz that Plaintiffs' accent light had fallen behind their garage and was now shining in Lambrecht's yard, and that Lambrecht had filed a complaint regarding the accent light. (Third Am. Compl., ECF No. 39 at Pg. ID 349.) In response to this statement, Katz told Officer Byrwa that a light from Lambrecht's yard was shining into Plaintiffs' backyard, to which Officer Byrwa responded "this is only about you and what you are." (*Id.*) Thereafter, Katz reinstalled the light. (*Id.* at 350.)

Plaintiffs next claim that in "late 2005 or early 2006," Lambrecht sought to obtain a variance to erect a privacy fence. (*Id.*) Defendant denied Lambrecht's variance request and Lambrecht apparently erected a fence notwithstanding the denial. (*Id.* Katz Aff., ECF No. 63-2 at Pg. ID 655.)

On approximately April 6, 2006, Lambrecht purportedly cut down a tree on Plaintiffs' property and stole wood. (Third Am. Compl., ECF No. 39 at Pg. ID 351.) Plaintiffs contend that Defendant took no steps to investigate or prosecute this occurrence, and that when Katz contacted Defendant to complain, Katz was falsely told that the property at issue was located in an easement and that Lambrecht was within her rights to cut down the tree. (*Id.*)

Plaintiffs further allege that they contacted Defendant multiple times in 2007 and 2008 to complain about bushes belonging to another neighbor, Jeanne Baker ("Baker"). (*Id.*) Plaintiffs assert that Baker's bushes are planted along Plaintiffs' driveway, and are unkempt and too tall. (*Id.*) Plaintiffs assert that consequently, their vision is impeded when backing out of their driveway. (*Id.*) Plaintiffs assert that Defendant agreed that the bushes violated the Village Code and contacted Baker. Plaintiffs assert that despite having violated a municipal ordinance, Baker never received a citation. (*Id.*)

Thereafter, the tumultuous relationship between Plaintiffs and Baker continued. Plaintiffs assert that Baker's bushes ultimately died, and that despite this, "Baker

would occasionally trim or sharpen the branches in order to cause injury to plaintiffs and/or their guests." (*Id.* at Pg. ID 352.)

Plaintiffs contend that in 2011, Baker installed flood lights and aimed them directly at Plaintiffs' driveway in an effort to impair their vision as they entered their driveway. (*Id.* at Pg. ID 354.) Plaintiffs further contend that the flood lights impaired their vision when entering their driveway, and also impaired the vision of "any driver driving down Auburn Street." (*Id.*) Plaintiffs complained to Defendant, and consequently, Officer Gosselin visited Baker "on several occasions, over an extended period of time, regarding the flood lights." (*Id.*) Plaintiffs state that thereafter, instead of citing Baker for a municipal ordinance violation, Officer Gosselin got on a ladder and repositioned the lights. (*Id.*)

Subsequently, on April 5, 2012, Baker filed a complaint to the Village Public Safety Department, alleging that Katz had "stomped on" her bushes. (*Id.* at Pg. ID 355.) On that same date, public safety officer Martin Bednarz ("Officer Bednarz") visited Plaintiffs' residence and issued a citation against Katz, charging him with malicious destruction of property. (*Id.*; Citation, ECF No. 63-3 at Pg. ID 665–66.) The matter was ultimately dismissed on May 17, 2012. (Compl., ECF No. 39 at Pg. ID 356; Pls.' Resp. Br., ECF No. 63 at Pg. ID 624.)

On the very next day, Officer Gosselin issued to Baker a "Field Correction Notice" ("notice") – rather than a citation – which informed Baker of the fact that her bushes were too tall and contained certain sharp sticks that may cause harm to

5

individuals "who may brush against them." (Field Correction Notice, ECF No. 63-5 at Pg. ID 723.) The notice also stated that the bushes needed to be removed. (*Id.*) Baker did not comply with the notice, and thereafter, Officer Gosselin issued two additional notices. (ECF No. 63-8 at Pg. ID 768.) The last field notice was sent on August 1, 2012, and informed Baker that she would receive a citation on August 5, 2012, if she failed to comply with the prior notices by that date. (Field Correction Notice, ECF No. 63-8 at Pg. ID 768.) Baker complied with the notice on August 5, and consequently, no citation was issued. (Pls.' Resp. Br., ECF No. 63 at Pg. ID 625.)

Plaintiffs also claim that on approximately April 3, 2013, Katz's automobile was vandalized while in his driveway. (Third Am. Compl., ECF No. 39 at Pg. ID 356.) Anti-Semitic slurs were written on his car in a substance resembling blood. (*Id.*) Plaintiffs contacted the police and federal authorities. (*Id.*)

Plaintiffs also claim that on June 22, 2013, an employee tending to Baker's yard intentionally mowed over the area of Baker's yard where debris was located, and that said debris struck Katz's car causing damage to the vehicle. (*Id.*at Pg. ID 357.) As a result, a heated verbal altercation between Katz and Baker's employee ensued. (*Id.*)

Thereafter, Plaintiffs filed this lawsuit. Relying on 42 U.S.C. § 1983, Plaintiffs allege violations of the Fourth Amendment, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Plaintiffs also assert a state law claim of malicious prosecution. Subsequently, Defendant filed its summary judgment motion. (ECF No. 61.)

## II.    Standard of Review

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id.* at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient.  *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including

7

depositions, documents, electronically stored information, affidavits or declarations,

stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P.

56(c)(1).  The court must accept as true the non-movant's evidence and draw "all

justifiable inferences" in the non-movant's favor.  *See Liberty Lobby*, 477 U.S. at 255.

### III.    Applicable Law and Analysis

## 1.  Equal Protection Claim

Plaintiffs assert that Defendants violated their equal protection rights by

selectively enforcing municipal ordinances against them and not their neighbors.

Plaintiffs further assert that the selective treatment they received was motivated by

their religious affiliation. Defendant asserts, and Plaintiffs do not dispute, that this

claim is a "class of one selective enforcement equal protection claim." (Def.'s Mot.,

ECF No. 61 at Pg. ID 590.) United States District Court Judge David M. Lawson, in

*Systematic Recycling, LLC v. City of Detroit*, 685 F. Supp. 2d 663 (E.D. Mich. 2010),

held the following, with respect to "class of one" equal protection claims:

> "The Supreme Court has recognized successful equal protection claims
> brought by a 'class of one' where the plaintiff alleges that he or she has
> been treated differently from similarly situated individuals." *Braun v.
> Ann Arbor Charter Twp.,* 519 F.3d 564, 575 (6th Cir.2008) (citing *Vill.
> of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d
> 1060 (2000)). The Supreme Court has "explained that the purpose of the
> equal protection clause of the Fourteenth Amendment is to secure every

person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Willowbrook,* 528 U.S. at 564, 120 S.Ct. 1073 (quoting *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 445, 43 S.Ct. 190, 67 L.Ed. 340 (1923) (internal quotation marks and alterations omitted)).

To establish a claim of class-of-one selective enforcement, a plaintiff must show "either that [the government actor] distinguished between [the plaintiff and others] based on some bad reason, proving intent, *see Farm Labor Org. Comm. v. Ohio State Highway Patrol,* 308 F.3d 523, 533–34 (6th Cir.2002), or that [the government actor] had no rational reason to distinguish between [the plaintiff and others]." *Boone v. Spurgess,* 385 F.3d 923, 932 (6th Cir.2004). The proof requires establishing that the plaintiff was selectively treated compared to others similarly situated and that the selective treatment was motivated by an intention to discriminate such as "race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *R.S.S.W., Inc. v. City \*676 of Keego Harbor,* 18 F.Supp.2d 738, 746 (E.D.Mich.1998), *rev'd on other grounds,* 397 F.3d 427 (6th Cir.2005) (citing *Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir.1995)).

*Systematic Recycling, LLC v. City of Detroit*, 685 F. Supp. 2d 663, 675–76 (E.D. Mich. 2010); *see also Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630, 650 (6th Cir. 2015) (holding that "[t]o succeed on [a class of one] claim, a plaintiff must allege either disparate treatment from similarly situated individuals and that the government actors had no rational basis for the difference [ ] or that the challenged government action was motivated by animus or ill-will.")

Defendant, in its summary judgment motion, asserts that Plaintiffs' claims are barred by expiration of the statute of limitations. (Def.'s Mot., ECF No. 61 at Pg. ID 585.) The district court in *Curran v. City of Dearborn*, 957 F. Supp. 2d 877, 882 (E.D.

Mich. 2013), recently held the following with respect to federal claims brought under

§ 1983 in Michigan:

> In Michigan, a three-year statute of limitations applies to federal claims brought under 42 U.S.C. § 1983. Mich. Comp. Laws § 600.5805(10); *Scott v. Ambani,* 577 F.3d 642, 646 (6th Cir.2009). The date on which a section 1983 claim accrues is determined by reference to federal law and in accordance with common-law tort principles. *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). "Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Ibid.* (citations, quotations marks, and brackets omitted). "In actions brought under § 1983, the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Ibid.* (citing *Kelly v. Burks,* 415 F.3d 558, 561 (6th Cir.2005)). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir.1984).

*Curran v. City of Dearborn*, 957 F. Supp. 2d 877, 882 (E.D. Mich. 2013)

Defendant asserts that this action was filed on April 5, 2013 (ECF No. 1), and

that the relevant date for the beginning of the statute of limitations under Michigan

law is therefore April 5, 2010. (Def.'s Mot., ECF No. 61 at Pg. ID 586.)  Further,

Defendant asserts that all injuries occurring prior to this date are time-barred. (*Id.*)

Next, Defendant contends that the equal protection injury is time-barred because it

was complete and cognizable in 2005 – when Officer Byrwa told Katz that he had

received the citation for outdoor storage because of his religious affiliation. (*Id.*)

It is apparent to the Court that Plaintiffs' equal protection claim was complete

and cognizable in 2005, following the conversation that Katz had with Officer Byrwa.

10

Again, at a 2005 pretrial conference pertaining to the citation issued against Katz for

his untidy yard, Officer Byrwa purportedly told Katz that part of the reason the

citation was issued was because Katz was a Jewish lawyer seeking to litigate the

matter. (Third Am. Compl., ECF No. 39 at Pg. ID 349.) Further, at that same 2005

pretrial conference, Officer Byrwa purportedly told Katz that he had received another

complaint from Lambrecht asserting that Katz's accent light was shining into

Lambrecht's yard, and when Katz retorted by telling Officer Byrwa that Lambrecht

had a light shining into Plaintiffs' yard, Officer Byrwa told Katz that "this is only

about you and what you are." (*Id.*) Thus, it is clear that Plaintiffs' equal protection

claim was ripe in 2005 as a result of this encounter – since Officer Byrwa essentially

told Katz that Katz was treated differently from his neighbor on the basis of religion.

Given that this encounter happened prior to April 5, 2010, the injury is time barred –

that is, unless the "continuing violations doctrine" applies.

With respect to the continuing violations doctrine, this Court turns to the

district court's recent decision in *Froling v. City of Bloomfield Hills*, 2013 WL

2626618 (E.D. Mich. 2013). The Court in *Froling* held the following, in relevant part:

> "The Sixth Circuit has previously recognized two distinct categories of
> continuing violations, namely, those (1) alleging serial violations and (2)
> identified with a longstanding and demonstrable policy of
> discrimination." *Id.* However, it warned that the continuing violations
> doctrine is applied most commonly in Title VII cases and rarely
> extended to § 1983 actions. *Id.* at 267.
>
> The first category of a continuing violation (i.e., a serial violation) is no
> longer recognized by the Supreme Court following it's holding in *Nat'l*

> *R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153
> L.Ed.2d 106(2002). Previously, as long as at least one discriminatory act
> occurred within the relevant limitations period, any sufficiently related
> prior acts would also be treated as though they fell within the limitations
> period. *Morgan,* 536 U.S. at 114. In *Morgan,* however, the Supreme
> Court held that "when [a plaintiff] seeks redress for discrete acts of
> discrimination or retaliation, the continuing violation doctrine may not
> be invoked to allow recovery for acts that occurred outside the filing
> period." *Sharpe,* 319 F.3d at 267 (citing *Morgan,* 536 U.S. at 113); *see
> also Taylor v. Donahoe,* 452 F. App'x 614, 619 (6th Cir.2011). Rather,
> each discrete incident of discrimination or retaliation constitutes a
> separate unlawful action that must fall within the statutory period.
> *Sharpe,* 319 F.3d at 267.
>
> Continuing violations that constitute "a longstanding and demonstrable
> policy of discrimination," on the other hand, remain cognizable. *Id.* at
> 268. However, in order to establish such a violation, a plaintiff " 'must
> demonstrate something more than the existence of discriminatory
> treatment in his case.' " *Id.* (quoting *Haithcock v. Frank,* 958 F.2d 671,
> 679 (6th Cir.1992)); *see also Cherry v. City of Bowling Green, Ky.,* 347
> F. App'x 214, 216 (6th Cir.2009) ("The policy must extend beyond the
> plaintiff who asserts the doctrine ...."). "The preponderance of the
> evidence must establish that some form of intentional discrimination
> against the class of which [the Plaintiff] was a member was the
> [Defendant's] standing operating procedure." *Sharpe,* 319 F.3d at 267
> (quoting *EEOC v. Penton Indus. Publishing Co.,* 851 F.2d 835, 838 (6th
> Cir.1988)).

*Froling v. City of Bloomfield Hills*, No. 12-12464, 2013 WL 2626618, at *5 (E.D.

Mich. June 11, 2013).

Notably, Plaintiffs' counsel in the instant action, also represented the Plaintiffs

in *Froling*, and should therefore be well aware of the current state of the law as it

pertains to the continuing violations doctrine.

Plaintiffs assert that "the record shows that all of the discriminatory acts which

Plaintiffs have suffered… should be deemed justiciable under the continuing

4:13-cv-11568-LVP-MKM   Doc # 72   Filed 03/31/16   Pg 13 of 19   Pg ID 1013

violations theory." (Pls.' Resp. Br., ECF No. 63 at Pg. ID 633.) Plaintiffs further

assert that the aforementioned facts provided in both the third amended complaint and

Katz's affidavit demonstrate that "the village has engaged in a 'long-standing and

demonstrable policy of discrimination' against plaintiffs." (*Id.*)

The Court disagrees. Having reviewed the record, it is readily apparent to the

Court that the preponderance of the evidence does not establish that some form of

intentional discrimination against Jewish individuals was standard operating

procedure in Beverly Hills or among officers. Rather, the facts as alleged by Plaintiffs

show that one individual officer – Officer Byrwa – was utterly intolerant, and on one

occasion, Officer Byrwa discriminated against Katz on the basis of religious

affiliation.  Plaintiffs' religious affiliation was never raised in any of the other

encounters between themselves and the Village Public Safety Department, or their

neighbors. The Court concludes that therefore, Plaintiffs have failed to demonstrate

that discrimination on the basis of religious affiliation was standard operating

procedure, and accordingly, the Court finds that the continuing violations doctrine

does not apply.

Plaintiffs next assert that alternatively, should the Court not apply the

continuing violations doctrine, "[P]laintiffs' claims are focused on actions which

began with the Village's issuance of a citation for malicious destruction of property

on April 5, 2012," and that these actions give rise to an equal protection violation.

(Pls.' Resp. Br., ECF No. 63 at Pg. ID 635.)  The Court disagrees.

Plaintiffs assert that they incurred selective treatment motivated by their religious affiliation, and that this was demonstrated by the fact that Officer Bednarz issued a citation for malicious destruction of property against Katz for purportedly stomping Baker's bushes. (*Id.* at Pg. ID 635.) Plaintiffs claim that the citation was ultimately dismissed and that thereafter, a different officer – Officer Gosselin – determined that the bushes were in violation of a municipal ordinance, and rather than issue a citation to Baker, Officer Gosselin issued three notices against her. (*Id.* at Pg. ID 624.)

These facts do not give rise to an equal protection clause claim. The officer who issued the citation against Katz was not the same officer who issued the notices against Baker, and Katz and Baker were alleged to have committed fundamentally different offenses – one offense being a criminal misdemeanor and the other, an ordinance violation. Thus, it is unreasonable to for Plaintiffs to argue that they were treated differently from their neighbor – given that they were not similarly situated.

Moreover, different officers have different practices. Plaintiffs concede that it was Officer Gosselin's practice to issue warnings rather than citations – Plaintiffs even admit it was Officer Gosselin's practice to give notice to the violator, allowing said violator to correct the situation. (Pl's Resp. Br., ECF No. 63 at Pg. ID 624.) In fact, Katz even admits that Officer Gosselin spoke to him about his untidy yard, instead of issuing a citation, when Lambrecht filed a complaint concerning the yard.

14

(Katz Aff., ECF No. 63-2 at Pg. ID 652.) Thus, Officer Gosselin treated Plaintiffs and Baker similarly.

Further, even if Plaintiffs were able to demonstrate that they received selective treatment with respect to the bushes, they fail to demonstrate that this selective treatment was motivated by religion – contrary to their assertions suggesting otherwise. They provide no facts that even remotely suggest that the treatment that they received with respect to the bushes was motivated by religion. The encounter Katz had with Officer Byrwa was time barred and the vandalism of Katz's vehicle was committed by unknown individuals. Accordingly, because Plaintiffs fail to demonstrate that they endured any selective treatment motivated by their religious affiliation, their equal protection claim necessarily fails.

### 2. Substantive Due Process Claim

Plaintiffs assert the following with respect to their due process claim: "Defendants' actions constituted a deliberate denial, under color of law, of plaintiffs' federal rights guaranteed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution[.]" Defendant asserts, and Plaintiffs do not dispute, that Plaintiffs allege a substantive due process claim. (Def.'s Mot., ECF No. 61 at Pg. ID 593.)

In order to bring a claim under the substantive portion of the Due Process Clause, a party must present a sufficiently important life, liberty, or property interest. *See Charles v. Baesler,* 910 F.2d 1349, 1352–53 (6th Cir. 1990). Substantive due

process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Id.* at 1353. The facts alleged by Plaintiffs fail to give rise to a violation of any recognized substantive due process rights.  Plaintiffs direct the Court's attention to the Sixth Circuit's substantive due process analysis in *Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630 (6th Cir. 2015), however that court's analysis is inapplicable to the instant matter given that the analysis centered around the fact that "[s]ubstantive due process [ ] protects citizens from being subject to arbitrary or irrational zoning decisions," and how "to succeed on a substantive due process claim based on this theory."  *Id.* at 648. Plaintiffs do not allege that they were subject to any arbitrary or irrational zoning decisions, so the Sixth Circuit's ruling as to that issue is inapplicable to the instant matter. Because Plaintiffs fail to provide facts in support of their substantive due process claim, the claim necessarily fails.

### 3. Purported violation of the "Warrantless Searches and Seizures Clause" of the Fourth Amendment

Plaintiffs next allege that Defendants' conduct constitutes a violation to be free from warrantless searches and seizures. (Third Am. Compl., ECF No. 39 at Pg. ID 360.)

The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. *Whren v. United States,* 517 U.S. 806, 809 (1996). A warrantless search and seizure is presumed to be unreasonable, and "invalid unless it falls within one of the narrow

16

well-delineated exceptions to the warrant requirement." *Flippo v. West Virginia,* 528 U.S. 11, 13 (1999).

That Plaintiffs raise this claim is both troubling and perplexing, given that Plaintiffs have not even alluded to the fact that any warrantless search and/or seizure actually occurred in the instant action. Since Plaintiffs do not provide any facts suggesting that a warrantless entry or seizure occurred, Plaintiffs' purported claim that they were "deliberate[ly] deni[ed]" their rights guaranteed under the "Warrantless Searches and Seizures Clause," certainly fails. (Third Am. Compl., ECF No. 39 at Pg. ID 360.)

### 4.  Plaintiffs' Rule 56(d) Discovery Request

Additionally, in response to Defendant's summary judgment motion, Plaintiffs assert that they are in need of further discovery, and attach a Rule 56(d) affidavit to their response to Defendant's summary judgment motion. (ECF No. 63-13 at Pg. ID 849.) A motion for summary judgment is to be considered after adequate time for discovery. *Celotex*, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. *Emmons v. McLaughlin*, 874 F.2d 351, 355-57 (6th Cir. 1989).

Plaintiffs had an opportunity to file, and did in fact file, a motion to compel discovery. Plaintiffs filed their motion to compel on April 15, 2015 – the date of the close of discovery. (ECF No. 52.) One week later, on April 22, 2015, Plaintiffs

withdrew their motion to compel. (ECF No. 54.) The Court finds that there has been a reasonable time for discovery and that any additional discovery would not be beneficial to Plaintiffs' arguments in opposition to the summary judgment motion. Additional discovery would only further delay resolution of this action. Accordingly, Plaintiffs' request for further discovery is rejected.

### 5. State Law Claim

Lastly, Plaintiffs assert a "state law claim of malicious prosecution." (Third Am. Compl., ECF No. 39 at Pg. ID 361; Pls.' Resp. Br., ECF No. 63 at Pg. ID 642.) "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical. Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254 (6th Cir.1996) (citation omitted). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (quoting *Musson Theatrical, Inc.*, 89 F.3d at 1254–1255 (6th Cir.1996)) (quotation marks omitted).

Given that a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3), having eliminated the federal claims, this Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claim of malicious prosecution.

18

Accordingly, for the abovementioned reasons, the Court **GRANTS**

Defendant's motion for summary judgment. (ECF No. 61).  Plaintiffs' state law claim

of malicious prosecution is **DISMISSED WITHOUT PREJUDICE**. All other

claims are **DISMISSED WITH PREJUDICE**.

    **IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 31, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of
record and/or pro se parties on this date, March 31, 2016, by electronic and/or U.S.
First Class mail.

s/ Richard Loury
Case Manager
